**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| STEVEN MILES MATCHETT<br>1234 Gordon Road<br>Jenkintown, PA 19046 | :<br>:<br>:<br>: | CIVIL ACTION |
| Plaintiff, | :<br>: | No. 21-4220 |
| v. | :<br>: | |
| MERCK & CO., INC., d/b/a<br>MERCK<br>2000 Galloping Hill Road<br>Kenilworth, NJ 07033 | :<br>:<br>:<br>:<br>: | **JURY TRIAL DEMANDED** |
| and | :<br>: | |
| MERCK SHARP AND DOHME<br>CORP<br>126 E LINCOLN AV M/S RY<br>RAHWAY NJ 07065 | :<br>:<br>:<br>:<br>: | |
| Defendants. | :<br>: | |

**FIRST AMENDED CIVIL ACTION COMPLAINT**

Plaintiff, by and through his undersigned counsel, hereby avers as follows:

**INTRODUCTION**

1.  This action has been initiated by Steven Miles Matchett (*hereinafter* referred to as "Mr. Matchett' or "Plaintiff") against Merck & Co., Inc., d/b/a Merck and Merck Sharp and Dohme Corp. (hereinafter collectively "Defendants") for violations of Section 1981 of the Civil Rights Act of 1866 ("Section 1981" – 42 U.S.C. § 1981), Title VII of the Civil Rights Act of 1964 ("Title VII" - 42 U.S.C. §§ 2000e, *et. seq.*), and the Pennsylvania Human Relations Act ("PHRA"). This action concerns allegations of discriminatory and/or retaliatory failure to promote because of Plaintiff's race/color. As a direct consequence of Defendants' unlawful actions, Plaintiff seeks damages as set forth herein.

**JURISDICTION AND VENUE**

2. This Court has original subject matter jurisdiction over the instant action pursuant to 28 U.S.C. §§ 1331 and 1343(a)(4) because it arises under the laws of the United States and seeks redress for violations of federal laws. Any state claims amended herein or included would be proper under this Court's ancillary or supplemental jurisdiction to hear state claims arising out of the same common nucleus of operative facts as those set forth in Plaintiff's federal claims.

3. This Court may properly maintain personal jurisdiction over Defendants because its contacts with this state and this judicial district are sufficient for the exercise of jurisdiction over Defendants to comply with traditional notions of fair play and substantial justice, satisfying the standard set forth by the United States Supreme Court in *International Shoe Co. v. Washington,* 326 U.S. 310 (1945) and its progeny.

4. Pursuant to 28 U.S.C. § 1391(b)(1) and (b)(2), venue is properly laid in this District because actions underlying this case occurred in this District and Defendants are deemed to reside where they are subject to personal jurisdiction, rendering Defendants herein as well.

**PARTIES**

5. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

6. Plaintiff is an adult male residing at the above-captioned address.

7. Defendant Merck & Co., Inc. d/b/a Merck is an American multi-national for-profit, business incorporated under the laws of the State of New Jersey with its principal place of business in New Jersey.

8. Defendant Merck Sharp and Dohme Corp., is a wholly-owned subsidiary of Merck & Co., Inc.

9. Upon information and belief, because of their interrelation of operations, common ownership or management, centralized control of labor relations, common ownership or financial controls, and other factors, Defendants are sufficiently interrelated and integrated in their activities, labor relations, ownership and management that they may be treated as a single and/or joint employer for purposes of the instant action.

10. Defendants employ Mr. Matchett at its 770 Sumneytown Pike, West Point, PA 19486 facility.

11. At all times relevant herein, Defendants acted by and through its agents, servants, and employees, each of whom acted at all times relevant herein in the course and scope of their employment with and for Defendants.

## FACTUAL BACKGROUND

12. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

13. Mr. Matchett dual filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") and Pennsylvania Human Relations Commission ("PHRC") on October 30, 2020.

14. The EEOC issued Mr. Matchett a Right to Sue letter on or about July 26, 2021. Mr. Matchett now timely files the instant action within ninety (90) days of his receipt of the Right to Sue letter.

### Mr. Matchett's Early Career and Merck's Repeated Failures to Promote Him

15. Mr. Matchett is a black, African-American male.

16. Mr. Matchett first started working for Defendants in 1998 as an intern in Defendants' Site Environmental Engineering Department.

17. Throughout his over twenty years of employment with Defendants, Mr. Matchett has been an exemplary employee but has been routinely denied promotions and advancement opportunities while white/Caucasian employees have been promoted instead.

18. In or about January 2000, Defendants hired Mr. Matchett as a full-time employee in the Site Environmental Engineering Department of Defendants' Pennsylvania Global Workplace & Enterprise Services ("PA-GWES") formerly known as Site Engineering Services("SES").

19. Defendants' PA-GWES division provides facility solutions across many disciplines including process, operations and strategy, facility management, integrated facility management and real estate.

20. By in or about 2013, Mr. Matchett was acting as an Associate Director but was not formally recognized with a promotion or corresponding pay increase and associated bonuses.

21. In or about May 2017, Defendants told Mr. Matchett that his position was being eliminated.

22. Without consulting Mr. Matchett, Defendants unilaterally placed him in the role of Manager, Maintenance and Utilities. This unilateral decision ignored alternative open positions that Mr. Matchett was better qualified for and more closely aligned with his skill set and competencies. Mr. Matchett raised his objections to this unilateral placement into a position he was not suited for and one he viewed as derogatory in nature.

23. Defendants simply directed Mr. Matchett to apply for any open positions if he desired.

24. Between 2017 and 2018, Mr. Matchett interviewed for numerous open leadership positions within the PA GWES organization. By means of example, he applied for Associate

Director of Environmental Health and Safety; Senior Specialist-Environmental Health and Safety; Senior Specialist-PA GWES Compliance and Investigation; Manager Laboratory Services; and Senior Specialist-Water Utilities.

25. Despite Mr. Matchett's stellar qualifications, Defendants promoted a Caucasian/White employee into every single leadership position Mr. Matchett had applied for.

26. As a result, Mr. Matchett made numerous formal complaints to Defendants' Office of Ethics to investigate what he reasonably believed to be discriminatory hiring and promotional practices over the next several years.

### Merck's 2020 Reorganization and Failure to Promote Mr. Matchett

27. In or about 2020 Defendants conducted a reorganization of the PA-GWES facility.

28. On July 16, 2020, during a virtual town hall meeting, Defendants announced that three (3) Caucasian/White employees were being promoted to unposted positions, at least one of which Mr. Matchett was both qualified for and had inquired about on previous occasions.

29. Upon information and belief, another one of these positions had been newly created specifically for a Caucasian/White employee.

30. During the Q&A portion of the townhall, Mr. Matchett raised numerous complaints, specifically that the promotion process was not equitable and had a disparate impact on African American/Black employees.

31. Mr. Matchett specifically noted how promoting three Caucasian/White employees to unposted (and newly created) positions was in direct contradiction to the active Chairman and

CEO of Defendant, Mr. Kenneth Fraizer's recent July 2020 comments in a Harvard Business School interview regarding the lack of African American employees in middle management.[1]

32. Mr. Matchett also complained that the purported increase in the percentage rate of the Under-Represented Employee Group ('UEG') metric within the West Point PA GWES organization provided a false narrative as to the actual number of people of color within the organization in *leadership* positions.

33. Mr. Matchett recognized and acknowledged during that meeting that while over the past several months there had been an increase in hiring of people of color, these hires were all at entry level positions within the organization.

34. In response, Defendants told Mr. Matchett he was "not eligible for any of the positions or promotions identified in the town hall meeting because he did not have an engineering degree.

35. In fact, Mr. Matchett holds two engineering degrees including a B.S. in Civil Engineering and a B.S. in Environmental Engineering both from the University of Miami.

36. Mr. Matchett's B.S. in Environmental Engineering included a concentration on potable water and wastewater management, and he served as Environmental Engineer on Defendants' PA West Point 2-million-gallon hydropillar project and developed extensive experience and technical knowledge with managing the Site's Water Utilities Department responsibilities.

37. After voicing complaints of racial discrimination and disparate treatment, Mr. Matchett received numerous communications from co-workers thanking him for speaking up and

---

[1] https://hbswk.hbs.edu/item/merck-ceo-ken-frazier-speaks-about-a-covid-cure-racism-and-why-leaders-need-to-walk-the-talk

drawing attention to the systemic racism that had permeated Defendants' PA-GWES facility. These co-workers expressed that they were "definitely proud and scared for you all at the same time;" that they "admire[d] your courage and candor in speaking out;" that they were "on my side;" and that they had "been here for 32 years and nothing has changed."

38. On July 17, 2020, Defendants' Associate Director called Mr. Matchett to indicate that members of the PA GWES Leadership Team conducted a meeting on the day of and after Mr. Matchett 's comments at the Townhall on 7/16/2021. The Associate Director indicated several PA GWES Leadership Team members and other persons corroborated the sentiments Mr. Matchett expressed during the townhall meeting.

39. The following Monday July 20, 2020, Mr. Matchett received an unsolicited email from one of the Defendants' Wellness Coaches entitled "checking in." Mr. Matchett responded that he was disappointed, ashamed, and dismayed with Defendants' systemic inability to recognize and acknowledge minorities at the PA-GWES facility.

40. Later in the day on July 20, 2020, Defendants' Associate Director called Mr. Matchett again and relayed to Mr. Matchett that he had conveyed to immediate management structure the validity of Mr. Matchett's complaints comments made at the townhall meeting.

41. During this conversation, Mr. Matchett again complained about the discriminatory re-organization process and raised concerns regarding his previous supervisor. Specifically he mentioned how the supervisor pushed inconsistent, non-contextual, inaccurate, and defamatory year-end reviews as well as labelled Mr. Matchett as "resistant," all of which made Mr. Matchett feel that his supervisor viewed him as a stereotypical "Angry Black Man."

42. The Leadership Team Member then mentioned that there was a position that "would be perfect" for Mr. Matchett, referring to an Associate Director position at Powerhouse.

7

The Leadership Team Member told Mr. Matchett that Defendants would have to post the position - unlike the other three positions which were not posted and went to Caucasian/White employees.

43. On July 21, 2020, Mr. Matchett received a meeting request to meet individually with a Senior GWES Leader on July 23, 2020. The meeting request subject line was "Workforce – XXXX/Miles" and there was no language in the body of the meeting request to know what the purpose and agenda of the meeting was. Mr. Matchett then called the Senior GWES Leader's assistant to determine the purpose of the meeting. The assistant conveyed to Mr. Matchett they were directed to set-up the meeting due to Mr. Matchett's request for a meeting for the complaints Mr. Matchett raised at the townhall meeting. Mr. Matchett informed to the assistant that he did not request a meeting.

44. On July 23, 2020, Defendants' Human Resources Business Partners sent Mr. Matchett a "Jabber" Instant Message. The Human Resources Business partner conveyed to Mr. Matchett that the Senior GWES Leader was concerned about Mr. Matchett and reached out to the Human Resources Business Partner.

45. Mr. Matchett again raised complaints with Defendants' Office of Ethics. In response he was told that the promotions were based on skill set, competency, and business needs. The Office of Ethics stated that Mr. Matchett's complaints were not substantiated, and they would "not comment on the specifics of the investigation." However, Defendants' later admissions for why Mr. Matchett was passed over are inconsistent, blatantly false and demonstrate clear pretext for their discriminatory motives. By way of example only and by no means an exhaustive list,

    a. Defendants claim that two roles were created and therefore not subject to internal posting requirements. However, only one new role was created and the others were

        existing roles filled by white/Caucasian employees without following internal posting requirements.

    b. Defendants claimed that the selected white/Caucasian employees were at higher levels than Mr. Matchett, when in fact Mr. Matchett was at the same or comparable levels as at least two of the white/Caucasian employees.

    c. Defendants told Mr. Matchett that he had been bypassed because he "worked in an entirely different department." However, at least one of the white/Caucasian employees who was promoted "worked in an entirely different department".

46. Mr. Matchett reluctantly applied for and was hired into this position more than ten months later.

47. Mr. Matchett was denied the rights, privileges, and benefits of a promotion from between July 2020 and March 2021 because of his race/color and for making complaints of discrimination.

48. Upon information and belief, no Black/African-American has held a senior leadership position at Defendants' PA-GWES facility in at least the last fifteen years.

49. Mr. Matchett believes and therefore avers that he was not selected for promotion because of his race/color and/or in retaliation for making complaints of what he reasonably believed to be discrimination.

50. As a result of the acts and conduct complained of herein, Plaintiff has felt extremely humiliated, degraded, victimized, embarrassed, and emotionally distressed.

51. As a result of the acts and conduct complained of herein, Plaintiff has suffered and will continue to suffer the loss of income, the loss of salary, bonuses, and other compensation which such employment entails. Plaintiff has also suffered future losses, emotional pain,

humiliation, suffering, inconvenience, loss of enjoyment of life, and other non-monetary losses. Plaintiff has further experienced severe emotional and physical distress.

52. The above are just some of the examples of unlawful discrimination and retaliation which Defendants exposed Mr. Matchett to.

53. Mr. Matchett claims continuing action violations by Defendant.

54. Defendants has exhibited a pattern and practice of discrimination and retaliation.

## Count I
## Violations of 42 U.S.C. § 1981
### (Racial Discrimination and Retaliation)

55. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

56. Plaintiff was continuously not selected for roles he was qualified for because of his race/color and/or because he complained of what he reasonably believed to be unlawful discriminatory employment practices.

57. Defendants' actions constitute violations of 42 U.S.C. § 1981.

## COUNT II
## Violation of Title VII of the Civil Rights Act of 1964 ("Title VII")
### ([1] Race Discrimination and [2] Retaliation)

58. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

59. Plaintiff was continuously not selected for roles he was qualified for because of his race/color and/or because he complained of what he reasonably believed to be unlawful discriminatory employment practices.

60. Defendants' actions constitute unlawful discrimination and retaliation under Title VII.

## COUNT III
### Violations of the Pennsylvania Human Relations Act ("PHRA")
([1] Race Discrimination and [2] Retaliation)

61. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

62. Plaintiff re-asserts and re-alleges each and every allegation of Counts I and II of this Complaint, *supra*, as they constitute identical violations of the PHRA.

63. These actions as aforesaid constitute violations of the PHRA.

**WHEREFORE**, Plaintiff prays that this Court enter an Order providing that:

A. Defendants are to compensate Plaintiff, reimburse Plaintiff, and make Plaintiff whole for any and all pay and benefits Plaintiff would have received had it not been for Defendants' illegal actions, including but not limited to back pay, front pay, salary, pay increases, bonuses, insurance, benefits, training, promotions, reinstatement, and seniority.

B. Plaintiff is to be awarded punitive damages, as permitted by applicable law, in an amount believed by the Court or trier of fact to be appropriate to punish Defendants for its willful, deliberate, malicious and outrageous conduct and to deter Defendants or other employers from engaging in such misconduct in the future;

C. Plaintiff is to be accorded other equitable and legal relief as the Court deems just, proper, and appropriate (including but not limited to damages for emotional distress / pain and suffering);

D. Plaintiff is to be awarded the costs and expenses of this action and reasonable attorney's fees as provided by applicable federal and state law and

E. Plaintiff is to receive a trial by jury as requested in the caption of this Complaint.

                Respectfully submitted,

                **KARPF, KARPF & CERUTTI, P.C.**

By:    */s/ Adam C. Lease*_____
        Ari R. Karpf, Esq.
        Adam C. Lease, Esq.
        J. Patrick Griffin, Esq.
        3331 Street Road
        Two Greenwood Square, Suite 128
        Bensalem, PA 19020
        (215) 639-0801
        *Attorneys for Plaintiff*

Dated: November 29, 2021